**Louise E. EDWARDS, individually and as Executrix of the Estate of Jesse J. Edwards, Plaintiffs,**

v.

**FAMILY PRACTICE ASSOCIATES, INC., and Edward R. Sobel, D.O., Defendants.**

**Civ.A. No. 98C–02–122JOH.**

Superior Court of Delaware, New Castle County.

Submitted: Nov. 27, 2001.
Decided: March 12, 2002.

---

William D. Fletcher, Jr., of Schmittinger & Rodriguez, P.A., Dover, for plaintiff.

Gilbert F. Shelsby, Jr., of Morgan, Shelsby & Leoni, Newark, for defendant.

## MEMORANDUM OPINION

HERLIHY, Judge.

This suit was originally filed in February 1998. Plaintiffs Louise E. Edwards, individually and as Executrix of the Estate of Jesse J. Edwards, have brought a wrongful death and survival action. They claim defendants Family Practice Associates, P.A., and Dr. Edward R. Sobel engaged in a course of continuing negligent treatment for failure to diagnose Jesse J. Edwards' stomach cancer. Plaintiffs allege that treatment started in May 1995 and ended in June 1996. There were a series of other office visits in 1995 and 1996. Plaintiffs' experts have opined that in 1995, Edwards already had stomach cancer. Further, they say it was at a stage where his chance of survival for five years was forty percent, at most. His life expectancy then was about two-to-three years.

Those same experts also say that in early 1996, Edwards' stomach cancer had progressed to a stage where his chance of five-year survival was less than five per-

cent. The cancer was diagnosed in July 1996. Edwards' stomach was removed and his treatment was followed by chemotherapy. This was the same treatment he would have received if diagnosed in 1995. Edwards died in November 1996.

Defendants have moved for summary judgment arguing Delaware does not allow a wrongful death action where the medical negligence is not the cause of death. They also question whether it recognizes a survival action for loss of chance. Even if it does, the defendants contend plaintiffs' action is time barred as any alleged medical negligence occurring within the period of the statute of limitations in 1996 caused no harm to Edwards; only the alleged medical negligence outside the period in 1995 arguably caused harm.

While the law is clear on plaintiffs' wrongful death action, that none can be maintained in these circumstances, it is unclear about a survival action. Several Supreme Court decisions have suggested that Delaware might recognize a cause of action for loss of chance of survival. But, no Court has held that Delaware recognizes such a claim for either a single act of medical negligence or one for continuing medical negligence. The law is clear that the statute of limitations for a claim of continuing medical negligence begins on the last day of negligent treatment. No decision, however, has addressed whether such a cause of action is time barred if the medical negligence which caused harm occurred outside the limitations period but the negligence occurring within the period caused no harm.

This Court holds plaintiffs can not maintain their wrongful death action where the medical negligence was not a cause of death. This Court now recognizes as a proper action under Delaware common law a loss of chance of survival. Further, even in an action for continuing negligent treat-

ment, if the negligent treatment in the continuum was not the cause of any harm, the action is time barred. The record in this case, however, presents a genuine factual issue on whether any medical negligence in the continuum and within the statute of limitations caused harm. Accordingly, defendants' motion is **GRANTED** in part and **DENIED** in part.

## FACTUAL BACKGROUND

Edwards had been a patient of Family Practice since 1970. On May 15, 1995, he was examined by defendant Dr. Sobel. According to Dr. Barry Singer, plaintiffs' causation expert, Edwards had stomach cancer as of that date. Dr. Paul Miller, plaintiffs' standard of care expert, indicates that there were breaches of the standard of care starting with this visit. But, Dr. Miller said the most significant breaches occurred when Dr. Sobel next saw Edwards on July 21, 1995. For purposes of this opinion, the specific breaches, particularly in July, are not important. They can be summarized, however, into three words: failure to diagnose. Dr. Sobel also saw Edwards on October 3 and 26, 1995.

Dr. Singer has testified that Edwards' stomach cancer in that May–to–July time frame was stage II or III. He said that the five-year survival rate at stage II is about forty percent and at stage III is twenty percent. Further, if diagnosed in that period, the treatment would have been to remove his stomach followed by chemotherapy. This was the same treatment received in July 1996 when his cancer was at stage IV with a less than five percent, five-year survival rate. Dr. Singer said he reached stage IV in early 1996 (while he was being treated by other Family Practice doctors). Both Dr. Singer and Dr. Miller have opined that if the surgery had occurred in August 1995, Edwards would have lived two-to-three years and he may

not have suffered the post-operative complications which he did due to his weakened condition in 1996. Dr. Sobel was the last Family Practice doctor to see Edwards and that was June 4, 1996. It is alleged this was the last date of a continuum of negligent medical treatment.

## PARTIES' CONTENTIONS

The defendants argue that plaintiffs cannot maintain a wrongful death action. The basis for this argument is that when the earliest alleged breaches occurred in mid–1995, Edwards' chances of survival were less than fifty percent. Further, it argues, plaintiffs' own experts said he would have lived only two-to-three more years as of August 1995, if properly diagnosed and treated. In short, he died of his cancer not as a result of any wrongful act of the defendants.

They also contend there can be no survival action by Edwards' representative. First, no such common law action has been recognized in Delaware. Even if now recognized, they assert there are no damages which can be recovered. This is based primarily on the evidence that the treatment in 1995 would have been the same as it was in 1996, removal of the stomach and chemotherapy. Presumably, the medical expenses would be the same, too.

Finally, assuming there is a survival action, the defendants point to the record indicating (1) breach of the standard of care occurred in 1995 and (2) Edwards was at stage IV in early 1996. At that time, there was no chance of survival; therefore, the only breaches which arguably caused injury were in 1995. As the suit was not filed until February 1998, it is time barred.

While acknowledging problems with a wrongful death action, plaintiffs still contend such an action is maintainable. Their focus, however, is on their ability to pursue a survival action for loss of chance. This position is supported, they say, by the evidence that, if diagnosed earlier, Edwards would have lived longer. In addition, their evidence also indicates he may not have suffered in 1995 the complications suffered in 1996 due to his weakened condition.

Plaintiffs, of course, contend that since defendants' continuing negligent medical treatment lasted until June 1996, their February 1998 filed suit is not time barred.

## APPLICABLE STANDARD

Summary judgment may only be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[1] The Court must view the evidence in the light most favorable to the non-moving party.[2] Where the record is incomplete or conflicting, issues turning on knowledge make summary judgment inappropriate.[3] If a material fact is in dispute or if it is desirable to inquire more thoroughly into the facts to clarify the application of the law, summary judgment is not appropriate.[4]

## DISCUSSION

■ An examination of the record in a light most favorable to the plaintiffs shows that Edwards died of stomach cancer and not from any act of medical negligence by any physician working for Family Practice. Even at the earliest alleged time of mal-

1. *Dale v. Town of Elsmere*, 702 A.2d 1219, 1221 (Del.1997).

2. *Billops v. Magness Const. Co.*, 391 A.2d 196, 197 (Del.1978).

3. *In Re Asbestos Litigation*, 673 A.2d 159, 163 (Del.1996).

4. *Wilson v. Triangle Oil Co.*, 566 A.2d 1016, 1018 (Del.Super.1989).

practice, May 15, 1995, Edwards had but a forty percent chance of living five years. At most, according to his experts, he had a chance to live only two-to-three more years.

The Delaware Supreme Court has rejected a wrongful death action in a medical negligence context where the patient had a less than fifty percent chance of survival and where the medical negligence was not the cause of death.[5] That is precisely the case here. On Edwards' first visit, his chances of survival were less than fifty percent. None of the expert testimony offered by the plaintiffs indicates that if properly diagnosed in May or June 1995, he had a better than fifty percent chance of living five years. Nor is there any evidence that any breach of the standard of care was the, or a, cause of his death. To the extent the defendants assert Delaware does not recognize a wrongful death claim in this situation, they are correct. That port of the defendants' motion is **GRANTED.**

But plaintiffs argue that such breaches hastened his death. Instead of dying in 1996, he might have lived until 1997 or 1998, if diagnosed and treated in 1995. Thus, they argue, Edwards' loss of chance of longer survival is what is at issue here.

■ The defendants offer three reasons why plaintiffs cannot maintain such a cause of action in this case. First, they argue Delaware does not recognize such an action. While no case has *held* such a cause of action exists, the Supreme Court has strongly suggested it might. In *United States v. Cumberbatch,* while holding there could not be a wrongful death action in a case similar to this, the Supreme Court recognized there could be a common law cause of action for loss of chance, also known as reduced possibility of survival.[6] Such a cause of action or variant is slightly different from one where, unlike here, the wrongful act caused the death. Delaware has long recognized that a survival action in that instance includes the right of the decedent's personal representative to seek damages for pain, suffering, lost wages and medical expenses suffered or sustained prior to death.[7]

*Cumberbatch* was not the first case to indicate a cause of action could exist for loss of chance. Prior to *Cumberbatch,* in *dicta,* the Supreme Court in *Shively v. Klein*[8] labeled such a cause of action as "innovative"[9] but one better addressed by the legislature.[10] The Court, nevertheless, seems to leave the door open to such a cause of action, if properly and timely pled.[11]

But, the court in *Cumberbatch* said that in the factual setting there, and here, as part of the development of common law, Delaware courts could fashion a remedy for loss of chance of survival.[12] This case presents that opportunity. Plaintiffs, at this stage, have presented the basis for a cause of action for loss of chance of survival. It is necessary to state, at this stage, however, that it is a survival action not a wrongful death action. It is an action on behalf of Edwards and is not for anyone

---

**5.** *United States v. Cumberbatch,* 647 A.2d 1098 (Del.1994).

**6.** *Id.* at 1103.

**7.** *Bennett v. Andree,* 252 A.2d 100, 103 (Del. 1969).

**8.** 551 A.2d 41 (Del.1988).

**9.** *Id.* at 44.

**10.** *Id.*

**11.** *Id.*

**12.** *Cumberbatch,* 647 A.2d at 1104.

else, including plaintiff Louise Edwards in her individual capacity.

■ Acknowledging that Delaware may recognize a survival action on Edwards' behalf, defendants, nevertheless, assert there is no factual basis for it in this case. They claim no damages can be shown. There would be no claim for lost wages in this case. Further, it notes, Edwards had the same treatment in July 1996 as he would have had if properly diagnosed in July 1995; namely, stomach removal and chemotherapy. That argument ignores this sworn statement from Dr. Singer, plaintiffs' causation expert:

> 7. It is my opinion that had the appropriate diagnosis and treatment occurred in August of 1995, [Edwards] would not have suffered the extensive wasting and weight loss that occurred. His general health would have been better, and his ability to recuperate from his surgery would have been improved.

> 8. It is my opinion that had the appropriate diagnosis and treatment occurred in August of 1995, [Edwards] would not have been forced to undergo the extensive surgical procedures with subsequent drainage of necrotic materials that actually occurred in the summer and fall of 1996 since earlier surgery would have allowed him improved healing ability and recuperation time.[13]

At this stage, examining these statements in a light most favorable to the plaintiffs,[14] there is a competent evidentiary basis underpinning plaintiffs' claim for damages for loss of chance. Defendants did not offer in their motion any evidence to show there was no factual dispute on that issue. They argued, instead, that since his treatment would have been the same in 1995 as it was in 1996, there can be no damages. But, as shown above, that argument fails.

■ Defendants' final line of defense is the statute of limitations. That argument is premised on several factors. First, when the alleged breaches of the standard of care occurred in 1995, Edwards had a forty percent chance of survival. Second, conceding for purposes of this motion that other breaches occurred in February, March, April and June of 1996, they cite Dr. Singer's testimony that sometime in January to March, 1996, Edwards' stomach cancer progressed to stage IV. At that stage, his chance of survival was less than five percent. Plaintiffs filed suit on February 19, 1998. Third, based on the two-year statute of limitations,[15] plaintiffs' suit is barred since any appropriate cause of action arose in 1995. The defendants, therefore, parse the various dates of the alleged medical negligence and end it at the time when Edwards' cancer left him with virtually no chance of survival.

Under the facts of this case, that argument cannot stand. Again, since this is a summary judgment motion, the Court must examine plaintiffs' evidence in a light most favorable to them.[16] As such, Edwards' progression to stage IV was in March of 1996 which puts the plaintiffs within the two-year statute of limitations. Edwards was examined on February 21, 1996. While Dr. Singer said this was within the time his cancer progressed to its worst stage, it does not mean at this juncture that necessarily a survival action was extinguished, as this suit was filed February 19, 1998.

---

**13.** Singer Affidavit (October 29, 2001) at 2.

**14.** *Alabi v. DHL Airways,* 583 A.2d 1358, 1361 (Del.Super.1990).

**15.** 18 *Del.C.* § 6856(1).

**16.** *Alabi,* 583 A.2d at 1361.

The issue is whether defendants can parse the negligent treatment continuum like that. In *Ewing v. Beck*,[17] the Supreme Court said, "The proper and appropriate focus for limitation purposes is the last date in the continuum of negligent medical treatment."[18] Later, the Court said:

The facts alleged by a plaintiff in support of a cause of action for continuous negligent medical treatment must be examined to see if the negligent treatment, as alleged, can be segmented or is, in fact, so inexorably intertwined that there is but one continuing wrong. If the allegation in a Complaint for continuing negligent medical treatment during a finite period is supported by the facts in the record, the statute of limitations runs from the date of the last act in the negligent continuum.[19]

The starting point in this analysis is the amended complaint. It alleges continuing negligent treatment from May 15, 1995 to June 4, 1996. The analysis must go on from there, however. Dr. Miller is plaintiffs' standard of care expert. When deposed, he gave a number of specifics about the breaches by Dr. Sobel who saw Edwards several times in 1995 and on June 4, 1996. Other Family Practice doctors saw him in February, March and April 1996. In his deposition, Dr. Miller addresses only one specific event in that period. That related to a colonos copy undertaken in April in an effort to determine why Edwards had blood in his stool. A polyp was found but it was not bleeding which, Dr. Miller said, should have prompted further testing to determine the source of his bleeding. No such testing occurred.

During this entire period, May 1995 to June 1996, Edwards was losing weight. The rate accelerated in late 1995 into 1996. The failure to associate this with Edwards' other symptoms and undertake appropriate diagnostic tests, was another basis for Dr. Miller's opinion that breaches of the standard of care occurred in 1996. This failure occurred with each of the appointments in February, March, April and June. Meanwhile, Edwards was reporting other symptoms consistent with stomach cancer. All this, Dr. Miller said, should have prompted appropriate testing which would have uncovered his cancer.

The Court's examination of the record leads to the conclusion that plaintiffs have adequately pled and presented, at this point, a case of continuing negligent medical treatment. Under the dictate of *Ewing*, the last date of such treatment was in June 1996. On that basis, a February 1996–filed complaint is not time barred.

The issue, however, remains more discrete than that and it was not before the Supreme Court in *Ewing*. If none of the alleged continuing 1996 breaches of the standard of care were a proximate cause of Edwards' loss of chance of survival, is plaintiffs' suit time barred? To recover, plaintiffs must show negligence.[20] But that is not all, plaintiffs must show such negligence was a proximate cause of injury; that is, but for the negligence, the injury would not have happened.[21] By the time the alleged breaches occurred in early 1996, Edwards may have had no chance of survival. On the record before the Court, certainly as to the February 21,

17. 520 A.2d 653 (Del.1987).

18. *Id.* at 662.

19. *Id.* at 662 [citations omitted].

20. *Wilson v. Derrickson,* 175 A.2d 400 (Del. 1961).

21. *Culver v. Bennett,* 588 A.2d 1094 (Del. 1991).

1996 and March 26, 1996 appointments, he may have, even though very slight.

■ *Ewing* holds that the limitations period starts on the last date of negligent medical treatment in the continuum. Plaintiffs' evidence on this motion indicates timely diagnosis and treatment in 1995 would have made a difference. But, the record is less clear about whether any of the alleged breaches even in February and March 1996 or thereafter were a cause of injury to Edwards which would bring this case within *Ewing's* holding on the calculation of the limitations period. Examining that record in a light most favorable to plaintiffs, the Court cannot say, however, that any of the breaches of the standard of care in 1996 were *not* a cause of injury to him. Negligence and proximate cause are most often left to a jury to decide.[22] In this case, a jury will have to decide whether (1) there were any standard of care breaches at any time in 1996 and (2) if so, whether any was or were a cause of injury. If any breach which is found within the two-year limitations period was not a cause of injury but only those outside it were, plaintiffs' cause of action would be time barred. But, there is a need to develop the facts more thoroughly, therefore, to determine the application of the law to them, which makes summary judgment inappropriate.[23]

In sum, there is no wrongful death action in this case. Plaintiffs have sufficiently pled and demonstrated, at this stage, a cause of action for continuing negligent medical treatment. Based on that, the Court finds that they have also pled and shown a cause of action for loss of chance which this Court now affirmatively recognizes as part of Delaware's common law. Their claim, however, would be time barred if they cannot show the negligence alleged within the limitations period was as cause of any injury to Edwards. Those issues will have to be presented to and decided by a jury.

## CONCLUSION

For the reasons stated herein, the motion of defendants Family Practice Associates, P.A., and Dr. Edward R. Sobel for summary judgment is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

---

**22.** *Robelen Piano Co. v. DiFonzo,* 169 A.2d 240, 245 (Del.1961); *In re Asbestos Litigation Pusey Trial Group v. Owens–Corning Fiberglas Corp.,* 669 A.2d 108, 111 (Del.1995).

**23.** *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del.1962).